# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BERTHA M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 2485 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381a, 1382c, about four years ago. (Administrative Record (R.) 190-202). She claimed that she became disabled as of December 25, 2014, due to severe depression. (R. 218). Over the ensuing three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636( c) on June 7, 2018. [Dkt. #6]. The case was reassigned to me six months later, on January 10, 2019. [Dkt. # 21]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**I.**

Plaintiff was born on October 16, 1980 (R. 192), and was just 34 when she claims she became unable to ever work again. (R. 192). She has a high school education, and work experience as a retail store supervisor, inventory counter and, most recently, as massage therapist. (R. 232). She says left that job at Christmastime in 2014 when she had a nervous breakdown and attempted suicide. (R. 48). She had stopped taking her medication, inflicted "two very superficial lacerations on her left wrist", and was hospitalized for a couple of weeks. (R. 364). At the time it was noted that her symptoms were not consistent with a diagnosis of PTSD. (R. 447). She later explained she thought her depression had a "seasonal component." (R. 452). Four days later she felt "great." (R. 416). She told the ALJ that she had been using cocaine once a week at the time, but stopped in May 2015. (R. 42). Conversely, she told her mental healthcare providers that she hadn't been using drugs at all or had used cocaine a single time. (R. 444, 455, 572).

Plaintiff also thought her problems had to do with her brothers not appreciating her and disliking her boyfriend of that time, who was a drug abuser. (R. 475, 556). Plaintiff left that relationship about four months later (R. 590). More recently, she had a boyfriend who was stable and reliable, although she complained that he was boring. (R. 644). Stress over finances also contributed to her problems, although she reported having a "steady income" but not a "working income." (R. 475, 567). As a result, she said she planned on seeking disability and unemployment insurance. (R. 475, 567). She was also angry she was not getting a tax refund in 2015 because she had not repaid her student loans. (R. 473, 565).

The medical record in this case is relatively small, as these cases go, covering about two and a half years of therapy following plaintiff's hospitalization. While consisting of 400 pages or so,

2

records are duplicated two and three times throughout. (R. 330-736). The records are in the usual jumble, and this may have led to some confusion. Both the ALJ (R. 21) and the plaintiff [Dkt. # 10, at 3] refer to treatment records from a Dr. Peggy Chou, but the records they cite appear to be from Dr. Castelino (R. 455-57). Dr. Chou does report that she saw plaintiff every two months from May 2015 through November 2016 (R. 594), but the only other mention of the doctor comes in a note from another mental healthcare provider in January 2017. (R. 613, 623). The record appears to include no treatment notes from Dr. Chou; there are treatment notes from Dr. Castelino (R. 454-58), and therapists, Daniel Sasuta (R. 439-53), Sha-Ron Frizzle (R. 459-95), and Daniel Jean (R. 608-735).

As is generally the case with plaintiffs claiming disability based on psychological issues like depression or anxiety, page after page of therapists' notes show that plaintiff is sometimes depressed, sometimes better, sometimes fine. Invariably, a plaintiff – like many people – will have issues with family, spouses, and significant others. There's not much in records like these to suggest whether a plaintiff can work or cannot. A perfect example of this is a note from March 9, 2015, where Therapist Frizzle reported that plaintiff "seemed to be in good spirits but still seemed to be very depressed." (R. 480). What an ALJ, or a reviewing court, is supposed to make of contradictory entries like that is a puzzle.

But, aside from the usual, it should be noted that throughout her treatment, based on the GAF scores various mental health professionals assigned her, from January 8, 2015 on, plaintiff was stable. Every session, month after month and sometimes week after week, her GAF score was at least 55. (R. 466, 469, 475, 480, 503, 505, 576, 578, 582, 594, 613). A GAF between 51 and 60 reflects "'Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)

OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Jelinek v. Astrue*, 662 F.3d 805, 807 (7th Cir. 2011)(quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM–IV–TR) 34 (4th ed. 2000). Compare this to the general notion that "GAF scores bounce around a great deal, however, because they depend on how the patient happens to feel the day he's examined." *Voigt v. Colvin*, 781 F.3d 871, 875 (7th Cir. 2015). This is the record the ALJ was tasked to consider.

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had one severe impairment: depressive disorder. (R. 17). Plaintiff was also obese, but it was not severe as it caused no more than minimal limitations to plaintiff's ability to perform basic work activities. The ALJ went on to determine that plaintiff's psychological impairment caused a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. (R. 18-19). But, because not one area was affected to a marked level, the ALJ found that plaintiff's psychological impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings. (R. 19).

The ALJ then stated that the plaintiff had the residual functional capacity to perform work at all exertional levels with the following nonexertional limitations due to her psychological impairment: "simple, routine repetitive tasks in a low-stress environment, defined as having few if any changes in the work setting and few if any simple work-related decisions; no contact with the

4

public; only occasional contact with co-workers but no tandem or team tasks where one production step depends on another; and would need a ten-minute break every two hours, which can be accommodated by routine breaks and lunch." (R. 19). The ALJ next noted plaintiff's laundry list of alleged symptoms: anxiety attacks, nightmares, irritability, paranoia, difficulty concentrating/focusing, short attention span, limited ability to complete tasks or understand instructions, difficulty getting along with others, week-long manic episodes every few weeks, and drowsiness for two hours after taking her medications. (R. 20). She then found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 24).

The ALJ then carefully and at length discussed the medical evidence, noting both normal and abnormal findings. (R. 20-25). The ALJ also assessed the medical opinion evidence. The psychiatrist that examined plaintiff in connection with her application for benefits found she could communicate with co-workers and supervisors, follow and retain most instructions, perform simple, routine tasks, but would have difficulty handling moderate work stress. The ALJ accorded significant weight to this opinion as it came from an experienced psychiatrist with knowledge of disability standards. (R. 24). Next, the ALJ noted that plaintiff's treating therapist found that she was markedly limited in her ability to concentrate and unable to function in a competitive work setting. The ALJ accorded this opinion moderate weight, saying it was not consistent with the treatment notes, was in response to prompts on a form, and was the result of a relatively short treatment relationship. (R. 24). The ALJ also accorded only moderate weight to the opinion of

plaintiff's psychiatrist that plaintiff would be disabled due to a number of significant limitations because these were not congruent with the psychiatrist's treatment notes and with other findings. (R. 25). Finally the ALJ said that the record generally supported the opinion of the state agency reviewing physician and firmly supported the opinion of the state agency reviewing psychologist. (R. 25).

Next, the ALJ determined that plaintiff could not return to her past work because is was semiskilled and required more contact with the public than she was now capable of. (R. 26). Then, the ALJ – relying on the testimony of the vocational expert – found that given her residual functional capacity, plaintiff could perform the following jobs that exist in significant numbers in the national economy: laundry laborer (DOT #361.687-018), industrial cleaner (DOT #381.687-018), and machine packager (DOT #920.685-078). (R. 27). Accordingly, the ALJ concluded that plaintiff was not disabled and was not entitled to benefits under the Act. (R. 29-30).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the

Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, at least in Social Security cases, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).[2] At the same time, the Seventh Circuit has also called its logical bridge requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

#### A.

The plaintiff argues that the ALJ made three reversible errors: 1) due to an unsupportable

---

[2] *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record, . . . ."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties, . . . No matter, because we may affirm on any basis that appears in the record.").

assessment of the "B" criteria at step 3, she failed to accommodate all plaintiff's limitations in her RFC; 2) her finding that plaintiff's allegations are not supported by evidence was premised on mischaracterizations, cherry-picking, and flawed assumptions; and 3) her assessment of medical opinions was haphazard and unsupportable.

We begin with plaintiff's criticisms of the ALJ findings regarding the "B" psychological criteria. First, the plaintiff argues that the ALJ failed to accommodate the plaintiff's inability to respond appropriately to supervisors or sustain concentration, ignoring "objective and subjective evidence of alternating episodes of hypermania and deep depression." [Dkt. # 10, at 8]. First, one cannot imagine what "objective" evidence of hypermania and deep depression the ALJ ignored. Psychiatric evidence is necessarily subjective, as there is no objective testing for impairments like depression or bipolar disorder. *See, e.g., Knapp v. Berryhill*, 741 F. App'x 324, 328 (7th Cir. 2018); *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016); *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). One supposes there might be a slim chance that a psychologist or therapist could possibly witness such an episode, *see Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015), but there is no indication that ever happened here.

The plaintiff doesn't give us a much better idea of what subjective evidence the ALJ ignored either. The plaintiff mistakenly claims the ALJ noted she had anger issues and difficulty getting along with others, especially authority figures. [Dkt. #10, at 8]. The ALJ actually said plaintiff reported she did (R. 18); that's different than a psychiatrist saying she did or the ALJ finding she did. Because, at the same time, mental health providers reported that she was pleasant, cooperative, able to relate, etc. (R. 18-19). And, there appears to be little if any evidence that plaintiff ever reported these anger issues to her healthcare providers. Plaintiff certainly does not direct the court to any such

8

reports, and it's the plaintiff's burden to do so. *See, e.g., Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014)(lawyers cannot expect judges to play archaeologist with the record); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018)*(*"As has become 'axiomatic' in our Circuit, '[j]udges are not like pigs, hunting for truffles buried in' the record.'"); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992)(". . . compelling the court to take up a burdensome and fruitless scavenger hunt . . . is a drain on its time and resources."). The only mention of such issues appears to be where plaintiff's psychiatrist, Dr. Chou, filling out a form provided by plaintiff's counsel, says that plaintiff's impairment would "preclude performance for 10% of an 8-hour workday" in the area of "[a]ccept instructions and respond appropriately to criticisms from supervisors." (R. 594-95). As the ALJ said (R.24), how would any mental healthcare provider know that, if a claimant was criticized, she would be unable to work for 48 minutes? Such an exact finding from a doctor who has seen a patient five or six times and has never reported witnessing that patient's response to criticism strikes one as "conjured out of whole cloth." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018) *Hill v. Colvin*, 807 F.3d 862, 870 (7th Cir. 2015).

In any event, the ALJ didn't make much of Dr. Chou's opinion, finding that it wasn't supported by treatment notes.[3] It wasn't, of course; as we said there is no other mention of such a limitation anywhere in the record or plaintiff's brief. Morever, it doesn't even line up with the rest of the form because Dr. Chou also reported that plaintiff had no problem remembering work-like procedures, understanding and remembering detailed instructions, or carrying out detailed instructions. (R. 594-95). Remarkably, while reporting plaintiff losing 10% of each workday by

---

[3] And, again, the record appears to be devoid of any treatment notes from Dr. Chou.

9

being unable to respond appropriately to criticism, Dr. Chou assigned her a GAF score of 65. That indicates plaintiff had "at worst some mild symptoms or some difficulty in functioning, but generally functioning pretty well." *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010); *see also Voigt v. Colvin*, 781 F.3d 871, 875 (7th Cir. 2015).

Next, the plaintiff finds fault with the ALJ determining that she had "only 'moderate' limitation in concentrating, persisting, or maintaining pace . . . reasoning . . . that, despite documented difficulties, she has 'consistently presented as alert, fully oriented, and coherent.'" [Dkt. #10, at 9]. Plaintiff argues that this cannot undermine medical findings. But the only medical findings she cites as contrary to the ALJ's determination are from the two-week hospitalization at the end of 2014 into the beginning of 2015 when plaintiff was assigned a GAF score of 30 to 40. [Dkt. # 10, at 9].

That didn't last, of course. Plaintiff ignores the fact that, following that brief period, her scores were consistently in the 50s and even the 60s, week after week. A disability determination can't be a snapshot; the definition requires at least twelve months duration. Even the plaintiff has to concede that her scores indicate moderate limitations [Dkt. #10, at 9]; and that is exactly what the ALJ found here: a moderate limitation in concentration. And interestingly, plaintiff's own treating psychiatrist, Dr. Chou, opined that she had *no* limitation on her ability to "[m]aintain attention and concentration for extended periods of time" and *no* limitation on her ability to "[p]erform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (R. 595). Plaintiff accuses the ALJ of cherrypicking and ignoring evidence but, judging from plaintiff's brief, plaintiff is the one reading the record selectively and ignoring page after page of entries. The ALJ didn't cherrypick; she engaged with both sides of the record and weighed the evidence in a

different way than plaintiff would have liked. *Cf. Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). But that lies at the heart of the fact-finder's function whether the fact-finder is a judge or a jury. *Whitehead v. Bond*, 2012 WL 1813683 (7th Cir. 2012); *Branion v. Gramly*, 855 F.2d 1256, 1263 (7th Cir. 1988); *Flint v. Colvin*, 543 Fed.Appx. 598 (7th Cir. 2013).

**B.**

Plaintiff also finds fault with the ALJ's assessment of her allegations regarding her symptoms. She accuses the ALJ of rejecting her allegations because she felt she was untruthful. [Dkt. #10, at 11]. Plaintiff seemingly comes up with this because the ALJ noted she made some inconsistent statements. [Dkt. #10, at 11]. But inconsistent statements can provide a basis for rejecting a claimant's allegations. *See, e.g., Elder v. Berryhill*, 2019 WL 2305519, at *3 (7th Cir. 2019); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); SSR 16-3p, 2016 WL 1119029, *7-8 (ALJ should consider whether statements are consistent with other evidence including claimant's own statements).

Plaintiff then goes on to nitpick a number of what she considers to be flaws in the ALJ's assessment of her allegations. The undeviating rule to be applied in reviewing an ALJ's assessment of a claimant's allegations is that review is deferential. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir.2010); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir.2009). We look to whether the ALJ's reasons for discrediting testimony are unreasonable or unsupported, and we "'give the opinion a commonsensical reading rather than nitpicking at it.' Accordingly, we will overturn the ALJ's credibility determinations only if they are 'patently wrong.'" *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir.2014); *Bates v. Colvin*, 736 F.3d 1093, 109–8 (7th Cir.2013); *Castile v. Astrue*, 617 F.3d

923, 929 (7th Cir.2010). That occurs only when the determination "lacks any explanation or support." *Murphy, supra*; *Elder*, 529 F.3d. at 413–14; *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir.2006). Demonstrating that an ALJ's assessment is patently wrong is a "high burden." *Turner v. Astrue*, 390 Fed.Appx. 581, 587 (7th Cir.2010). *See also Milliken v. Astrue*, 397 Fed.Appx. 218, 225 (7th Cir.2010)(describing the burden as "heavy."). All an ALJ need do is minimally articulate legitimate reasons for disbelieving a claimant. *Carter v. Colvin*, 556 Fed.Appx. 523, 527 (7th Cir.2014); *Schreiber v. Colvin*, 519 Fed.Appx. 951, 961 (7th Cir.2013); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir.2012).

Plaintiff complains that the ALJ noted that medications kept plaintiff's symptoms stable, pointing, yet again, to her hospitalization at the end of 2014. [Dkt. # 10, at 11]. Again, the plaintiff ignores the evidence that comes since then, GAF scores consistently at 55 and above and her own psychiatrist's finding that had *no* limitation on her ability to "[m]aintain attention and concentration for extended periods of time" and *no* limitation on her ability to "[p]erform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (R. 595). While plaintiff allows that there was at least one GAF score of 55 – ignoring all the others – she argues that even this indicates moderate symptoms and should not have been a basis for questioning her allegations of crippling symptoms. [Dkt. # 10, at 11-12]. "Yet . . . even a moderate[] limitation in an area of mental functioning 'does not prevent an individual from functioning satisfactorily.'" *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013). "An ALJ may rely on medical evidence that the condition is treated and controlled by medication." *Truelove v. Berryhill*, 753 F. App'x 393, 397 (7th Cir. 2018).

Plaintiff complains that the ALJ "asserts that external stressors exacerbate Plaintiff's symptoms, thereby making them somehow less real." [Dkt. # 10, at 12]. The ALJ never said they were "less real" so it's not clear what plaintiff is driving at. Plaintiff did argue she doesn't know why precipitating factors are relevant. But, as the ALJ clearly explains (R. 22), she is directed to consider them by the very regulations and Social Security Ruling plaintiff claims the ALJ is not following: 20 C.F.R. 404.1529(c)(3), 416.929(c)(3), and SSR 16-3p, 2017 WL 5180304, * 7. Precipitating factors are obviously relevant because they can sometimes be accommodated in a plaintiff's RFC. If, as here, a plaintiff is triggered by frequent contact with others, an ALJ can reduce that to occasional or no contact in an RFC. If triggers are ones's mother or boyfriend, those triggers, of course, will not be present in a work environment.

Plaintiff then, again, misreads the ALJ's decision and claims the ALJ equated her basic activities, such as caring for her children and her mother, with holding down a full-time job. [Dkt. # 10, at 12]. Plaintiff doesn't cite to a page from the ALJ's decision; with good reason, because nothing like that is in there. The ALJ noted these activities – along with taking some college classes – and said they were inconsistent with her "symptom allegations", not that they were consistent with work. (R. 23). Plaintiff alleged crippling depression, claiming she would be unable to do anything at all for days at a time once a month or once a week. (R. 57). That doesn't jibe with caring for children, a mother, and taking classes. And, again, an ALJ is free – is supposed to – assess a claimant's statements for consistency. *Summers*, 864 F.3d at 528 (7th Cir. 2017); SSR 16-3p, 2016 WL 1119029, *7-8. Prior inconsistencies are matters that a trier of fact – be it a judge or jury – routinely considers in assessing credibility.

In the end, we cannot reject an ALJ's assessment of a plaintiff's allegations unless the plaintiff shows it was patently wrong. *Hammerslough v. Berryhill*, 758 F e d. App'x 534 (7th Cir. 2019); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). The plaintiff has failed to do that here. She claims she shows no propensity for exaggeration but, when her allegations for example, unable to do anything for days at a time, are set against the record (for example, mild symptoms and functioning pretty well, or no limitations in the ability to "[p]erform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (R. 595)). They fare rather poorly. The ALJ had to consider all the evidence and weigh plaintiff's allegations against the medical record and other evidence to reach a conclusion. We cannot say that we would have decided otherwise. But even if we might have, it is not the reviewing court's place to substitute its judgment for the ALJ's or to reweigh the evidence. *Truelove*, 753 F. App'x at 397; *Walker v. Berryhill*, 900 F.3d 479, 483 (7th Cir. 2018); *Pepper*, 712 F.3d at 362. That is clearly what the plaintiff is asking to be done here, however.

### C.

Finally, the plaintiff has issues with the ALJ's rejection of the opinions of her treating therapist and her treating psychiatrist. An ALJ need not accept the opinion of a treating source that a claimant is disabled as long as she can provide good reasons for rejecting it. *Punzio v. Astrue*, 630 F.3d 693, 698 (7th Cir.2011); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir.2010). The ALJ did just that here, and each of the reasons she offered was a valid one. *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir.2007)(doctor's opinion inconsistent with doctor's own treatment notes); *Skarbek v. Barnhart*, 390 F.3d 500, 503–504 (7th Cir.2004)(doctor's opinion was not supported by medical evidence); 20 CFR § 416.927(d)(3) ("The better an explanation a source provides for an opinion, the

14

more weight we will give that opinion.").

As already noted, the ALJ felt that Dr. Chou's opinion that plaintiff could not work was incongruous. And it was. Again, Dr. Chou found that plaintiff had only mild symptoms at the time she opined she could not work and found she had no limitations remembering work-like procedures, understanding and remembering detailed instructions, carrying out detailed instructions, or maintaining concentration. All of these findings undermined the psychiatrist's opinion, as the ALJ found. An ALJ may decline to credit a treating physician's opinion if it is "internally inconsistent." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir.2004); see also *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir.2007). That can certainly be said of Dr. Chou's opinion here.

Similarly, the ALJ found that the treatment notes of the therapist were not consistent with his opinion. Mr. Jean reported that plaintiff was markedly limited in daily activities, socialization, and concentration. (R. 592-93). Plaintiff disagrees with the ALJ's rejection of Mr. Jean's opinion but does not direct the court to anything in Mr. Jean's treatment notes consistent with the dire limitations he found. While plaintiff complained about concentration issues due to racing thoughts at the session right before Mr. Jean filled out the form (R. 714), the session before that she reported she was doing well in college and got a B on a recent test. (R. 710). She reported doing yoga everyday for two hours (R. 704), and attending college regularly at night. (R. 692). She indicated she would get out more and socialize but had to stay home with her children. (R. 692, 696). As the ALJ found, those notes do not demonstrate marked limitations in all areas of functioning. *See Henke v. Astrue*, 498 Fed. Appx. 636, 639 (7th Cir. 2012) (explaining that an ALJ does not play doctor by examining the medical record and determining that a doctor's conclusions are unsupported by the

15

doctor's own treatment notes or contradicted by other medical evidence); *Kleven v. Colvin*, 675 F. App'x 608, 611 (7th Cir. 2017)(ALJ properly rejected opinion where the described limitations were unsupported by doctor's own treatment notes and objective medical findings).

## CONCLUSION

The judgment of the ALJ is affirmed. The Motion of the Commissioner is granted and that of the Petitioner is denied.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 9-17-19